# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* B.G.

No. 19-0823 (Randolph County 18-JA-033)

**FILED**

**April 6, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.W., by counsel G. Phillip Davis, appeals the Circuit Court of Randolph County's August 30, 2019, order terminating her parental rights to B.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Timothy H. Prentice, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights instead of imposing a less-restrictive dispositional alternative and denying her motion to continue the dispositional hearing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2018, the DHHR filed an abuse and neglect petition that alleged petitioner tested positive for amphetamine and Subutex upon giving birth to the child. According to the petition, the child was born drug-exposed at thirty-two weeks gestation and his umbilical cord tested positive for norbuprenorphine, amphetamine, and methamphetamine. The following month, petitioner stipulated to the allegations in the petition and was granted a post-adjudicatory improvement period. Due to petitioner's compliance with the terms and conditions of her improvement period, it was extended over the next several months. At the end of her post-adjudicatory improvement period, the child was returned to petitioner's care on a trial basis.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In February of 2019, the circuit court granted petitioner a post-dispositional improvement period and permitted the trial reunification to continue. However, on March 5, 2019, the child was removed from petitioner's care after the DHHR raised concerns that petitioner continued to have contact with the child's father, despite the fact that the father previously voluntarily relinquished his parental rights to the child and petitioner was ordered not to have contact with him or permit him to have contact with the child.

In June of 2019, the circuit court held a review hearing during which the DHHR expressed concerns that petitioner was "dishonest . . . about the contact" between her and the father. According to the DHHR, petitioner only admitted to the contact "when confronted with . . . specific eyewitness accounts." As such, the DHHR indicated that this conduct created concerns about its inability to "[e]nsure that [petitioner would] be willing to protect the child from that contact in the future." The DHHR also introduced testimony from a Child Protective Services ("CPS") worker that established that the child regressed in his development after being placed in petitioner's care. Prior to being placed in petitioner's care, the child "was walking along the side of the couch, pulling himself up." However, after being in petitioner's care for a few months, the child "wasn't standing on his own, he wasn't pulling himself up, he wasn't bearing weight on his legs." The CPS worker also indicated that during a recent interaction, petitioner expressed that she "still didn't understand why [the child] was . . . taken in the first place." Further, based on testimony from her service providers, the circuit court found that petitioner missed several drug screens in the months leading up to the hearing. When questioned as to why she missed drug screens, petitioner indicated that she "kind of gave up" on participating in her improvement period after the child was removed from her care in March of 2019. Because the circuit court found that petitioner had not been successful in her improvement period, it set the matter for disposition.

The circuit court held a dispositional hearing in July of 2019. Petitioner did not attend, but was represented by counsel. Petitioner's attorney moved to continue the hearing to secure petitioner's attendance, but also admitted that petitioner had not contacted him regarding the hearing. The circuit court denied the motion, finding that petitioner had actual notice of the hearing. Based on the evidence presented, the circuit court found that "after the child was returned to her care, [petitioner] missed [thirteen] drug screens." The circuit court further found that there was "clear and convincing evidence that [petitioner] had and allowed contact with the child's father, which was a violation of the improvement period." Additionally, the evidence showed that "[t]he developmental progress that the child . . . made while in foster care was lost rather quickly after being returned to [petitioner's] care." As such, the circuit court found that termination of petitioner's parental rights was necessary for the child's welfare and that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future. Accordingly, the circuit court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2] The father voluntarily relinquished his parental rights below. According to the parties, the permanency plan for the child is adoption in the current foster home.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues that the circuit court erred in terminating her parental rights because "there was a less[-]restrictive alternative to the termination of [her] parental rights" and because she "opposed the severance of her parental rights and preferred a less[-]restrictive alternative." Petitioner fails to raise any argument, however, as to why a less-restrictive dispositional alternative would have been appropriate. More importantly, petitioner does not challenge the circuit court's findings that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the child's best interest, the two findings upon which a circuit court may terminate a parent's parental rights pursuant to West Virginia Code § 49-4-604(b)(6). On the contrary, the record contains ample evidence upon which the circuit court based these findings.

According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As set forth above, petitioner admitted that she essentially abandoned her improvement period in March of 2019 when the child was again removed from her home and she missed thirteen drug screens in the months leading up to the dispositional hearing. Further, the record shows that petitioner violated several of the terms of her improvement period, the most troubling of which was her repeated dishonesty with the multidisciplinary team regarding her continued contact with the child's father against court order. In short, despite petitioner's initial compliance with the requirements imposed, the record shows that she was effectively noncompliant with services for several months prior to the dispositional hearing and failed to follow through with the case plan. Additionally, given petitioner's dishonesty regarding her contact with the father, the DHHR expressed concern that it could not ensure the child's safety in petitioner's care. Coupled with the

ongoing issues that necessitated the filing of the petition, it is clear that this evidence supported the circuit court's finding that termination of petitioner's parental rights was in the child's best interest. Because petitioner raises no argument regarding the appropriateness of these findings, coupled with our review establishing that these findings were based upon ample evidence, it is clear that petitioner is entitled to no relief. Indeed, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, the circuit court did not err in terminating petitioner's parental rights.

Finally, petitioner alleges that the circuit court erred in denying her motion to continue the dispositional hearing in order to permit her to attend. This Court has previously held that "[w]hether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion." *Tiffany Marie S.*, 196 W. Va. at 235, 470 S.E.2d at 189 (citation omitted). The record shows that the circuit court, in denying the motion to continue, specifically found that petitioner "appeared at the last hearing on June 3[, 2019,] and knew about today's hearing." On appeal to this Court, as in the circuit court below, petitioner provides no explanation for her absence at the dispositional hearing. In light of the fact that it appears that petitioner simply chose not to attend the dispositional hearing, despite her prior notice, we decline to find an abuse of discretion in the circuit court's denial of petitioner's motion to continue.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 30, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison